IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MICHAEL FLOYD WILSON                                                      PLAINTIFF

VERSUS                                                  CIVIL ACTION NO. 1:10cv66-RHW

J.R. STACHURA and JOSHUA BROMEN                            DEFENDANTS

## MEMORANDUM OPINION

     Before the Court is [84] Defendants' motion seeking reconsideration of [83] the Court's memorandum opinion denying [77] Defendants' motion for summary judgment. Defendants contend that had the Court properly credited Plaintiff's deemed admissions, its ruling on the motion for summary judgment would have been different. Plaintiff filed no response to the motion to reconsider. After thoroughly reviewing the matter, the Court concludes that there is merit to the motion to reconsider. Because the Court did not properly credit the deemed admissions, the Court finds its order [83] should be vacated, and this memorandum opinion substituted therefor, granting the motion for reconsideration, and granting summary judgment for Defendants.

Procedural History and Facts

     On February 2, 2010 the *pro se* Plaintiff Michael Floyd Wilson filed this lawsuit pursuant to 42 U.S.C.A § 1983, naming as defendants Harrison County, the Harrison County Adult Detention Center (HCADC) and Sheriff Melvin Brisolara. In his original complaint, Wilson claimed he was denied proper medical care while in custody at HCADC and that excessive force was used against him by the police officers who arrested him on April 29, 2009. The Court dismissed Defendants HCADC and Harrison County by order [17] entered July 8, 2010, and

summons was issued for Sheriff Brisolara the same date. The Sheriff answered on July 30, 2010, and the Court set the case for omnibus/*Spears* hearing on October 20, 2010. At the hearing, the parties consented to the exercise of jurisdiction by the United States Magistrate pursuant to 28 U.S.C. § 636(c) and FED.R.CIV.P. 73.[1] During the October 2010 hearing, Wilson agreed to dismiss his claims against Sheriff Brisolara, but stated he wanted to pursue his claims of excessive force during his arrest by officers of the Gulfport, MS Police Department (GPD). Although his complaint did not name any GPD officers, Wilson's complaint alleged:

> I was under arrested (*sic*). I ran off they followed, they caught me by tazing me, then they proceeded to handcuff me, then as I lie on my stomach, with two officers on my back, they beat me in the back of my head causing me to have a concussion and ten staples to close the wound then they tazed me in the kidneys and lower back causing me to loose (*sic*) kidney function, was hospitalized overnight, this as a result has caused consistant (*sic*) migrains (*sic*) and I loose (*sic*) kidney and bladder control at various times causing me to urinate on myself.

[1, p. 4] The Court advised Wilson at the hearing that he would have to identify the officers who arrested him, and granted Wilson until December 1, 2010 to file an amended complaint "against as yet unnamed defendants." [26]

On October 29, 2010, Wilson filed [27] a document titled "Amended Complaint," which stated, "Deputy J.R. Stachra[2] and Deputy Joshua Bromen of the Gulfport Police Department are being named by the plaintiff Michael Floyd Wilson as defendants to the prisoner's civil rights lawsuit filed before this court on the 24th day of February 2010." The Court ordered process issued for the officers November 1, 2010 [28] and both were served November 23, 2010 [30].

---

[1] After being added as Defendants, Officers Stachura and Bromen also consented [49] to jurisdiction by the Magistrate Judge, and the case was referred to the undersigned for all purposes by order [50] entered July 22, 2011.

[2] The name of this defendant has since been corrected to show it is J.R. Stachura.

On December 13, 2010, Officers Stachura and Bromen moved to dismiss [27] Wilson's amended complaint under FED.R.CIV.P. 12. On April 14, 2011, the Court entered [39] an order holding in abeyance any ruling on the motion to dismiss until May 16, 2011 "to allow Plaintiff to file an amended complaint setting forth his specific allegations against each of [the] Defendants." Plaintiff filed [41] an amended complaint on May 13, 2011, in which he states he is suing Stachura and Bromen in their individual capacities, and sets forth these factual allegations:

> On April 29, 2009 at about 3:51 a.m., the Plaintiff was traveling west on Switzer Road with a female passenger first name Sharon last name unknow (*sic*) to the Plaintiff. However she can and needs to be sumonsed (*sic*) to court as a witness for the Plaintiff. She can be found through the jail arrest records. She was also arrested on the time of this incident.
> We came to the intersection of Cowan & Lorraine Road where the signal light would not work, after waiting about 5 minutes we then proceeded cautiously through the intersection. Just as we got across the road the female passenger looked over her left shoulder and notifys (*sic*) the Plaintiff that two police patrol units are coming across Cowan Larraine road. She said they came from the parking lot beside the building on the corner of Switzer and Cowan Larraine Roads. They knew the signal light would not work, and they were sitting there waiting on someone to come along and run through it. They then came across the road without any headlights on, this scared frightened both the Plaintiff and the passenger so badly that the Plaintiff was frighten to even stop once the units turned on the blue lights. The Plaintiff then pulled over in the same parking lot beside the building that the two unit (*sic*) were hiding in. The Plaintiff jumped out of the truck and tryed (*sic*) to flee. At this point the two Defendants without giving any warning to the Plaintiff to halt/freeze, they both shot the Plaintiff in the back with their Tazer weapons causing the Plaintiff to fall face down in the muddy ditch, and then the two Defendants jumped in the ditch on the Plaintiffs back. While on the Plaintiffs back they then cuffed him, and once he was subdued, the Defendants one of which started beating the Plaintiff in the back of his head with a blunt shaped object, and at the same time the other Defendant put his Tazer weapon up against the Plaintiffs lower back and Tazed him repetedly (*sic*). At the time both Defendants were assaulting the Plaintiff they were saying you "want to run, run now M.F."
> And as a result of the brutle (*sic*) assault the Plaintiff urinated on hisself (*sic*). And sustained a laceration to the back of his head which required staples. Which he was transfered ((*sic*) to Gulfport Hospital emergency room for treatment. Then once the two Defendants stoped (*sic*) their assault while still on the Plaintiffs back one of the Defendants stated to the Plaintiff "stop trying to grab my gun." When the Plaintiff heard this he and realized he was about to be shot he did the only

> thing he could do. He started to scream please don't shoot me begging for his life to be spared. The Plaintiff at this point went into a state of shock causing him to lose consciousness.

[41, pp. 1-2]

Defendants moved to dismiss [41] the May 2011 amended complaint based upon Wilson's allegation that the facts state a violation of his Eighth Amendment right to be protected from cruel and unusual punishment, because Wilson was not yet under arrest when the acts complained of occurred. [44] Taking into consideration that Wilson was proceeding *pro se*, the Court found the allegations of his original complaint and amended complaints stated sufficient facts to survive both Defendants' motions to dismiss, denied both motions, and set the case for a supplemental *Spears* hearing to examine Wilson's allegations against Bromen and Stachura. *See* docket entries [51], [55] and [47].

In the supplemental *Spears* hearing on August 10, 2011, Wilson testified that at approximately 3:51 a.m. on April 29, 2009, he was traveling west on Magnolia Street when he came to the stop light at the intersection with Cowan Lorraine Road. The light was red, and he waited for a time for it to change, but when it did not, he admittedly ran the red light. When his passenger pointed out that two police officers were coming from the south, Wilson, who was out of jail on a felony bond at the time and did not want to have his bond revoked, turned the truck he was driving and headed toward the south. He pulled into a parking lot, but the police cars pulled in on both sides of the truck. When the officers asked him to identify himself, Wilson admittedly gave a false name, then jumped out of the truck ran from the scene. According to Wilson, the officers shot him in the shoulder blades with taser weapons, causing him to fall into a ditch. He made it around the ditch, but then the officer(s) caught up to him, got him down to the ground, got on his back and beat him in the back of the head. The officers handcuffed him

telling him to, "stop resisting, stop resisting," then used tasers on him again.  One of the officers told him to "stop trying to grab my gun."  Wilson testified he "blacked out," and was awakened by a GPD sergeant in the Memorial Hospital Emergency Room, where he was treated for his injuries, which included receiving 10 staples to close a laceration in his head.  Wilson is unable to state which officer did what during the arrest, but stated he is suing the officers in their individual capacities.  Wilson denied the officers yelled at him to stop and stated he could not tell whether they were in uniform, but he admits they drove up in police cars.  Although he denied he had been drinking or using any drugs the night of the arrest, Wilson's passenger told Officer Stachura she saw Wilson ingest pills from a bottle and put the bottle under the driver's seat [77-6, p. 5], and a medical care provider testified Wilson informed him that he had been using both alcohol and drugs.  [77-8, p. 2]

      Wilson states he was driving a Nissan truck the night of his arrest, with the permission of a girl he went to school with, and that he was driving it with a key.  The affidavits of Officers Bromen and Stachura state that the driver's window was broken out of the truck, that there was glass inside the vehicle from the window, that the ignition in the truck had been popped out and there was no key, and that during their efforts to subdue him, Wilson attempted to get Officer Stachura's gun.  [77-7], [77-6]  Wilson admits the  driver's window was broken out of the truck; that he gave a false name when asked to identify himself, that he fled from the officers, that he ran the red light, made an illegal U-turn, had no proof of insurance and no driver's license, and possession of drug paraphernalia (a crack pipe and a bottle of pills under the driver's seat [77-6, p. 5]), and resisted arrest.  He pled guilty, for time served, to all ten of the offenses with which he was charged [77-5], because, he stated, he knew he was going to prison for crimes he had

committed in Jackson County.³  He denies that he attempted to get Officer Stachura's gun, as both officers' affidavits state.  Wilson claims he has sustained permanent injury; that as a result of the force used on him during the arrest, he cannot control his bowels, involuntarily urinates, and has post-traumatic stress disorder.  According to Wilson, a doctor in Rankin County told him these problems could be the result of his being tased by Defendants during the arrest, however he has presented no evidence to support these allegations.

In their motion, Defendants asserted that Plaintiff failed to timely respond to the requests for admissions which Defendants propounded to him [77-4], and the admissions were therefore deemed admitted.  However, the Court was under the erroneous impression that Plaintiff had served responses to the requests for admissions due to docket entry [59], a letter from Plaintiff to the Clerk dated September 27, 2011, and filed by the Clerk on October 21, 2011 in which the Plaintiff advised the Clerk of a change of address and further stated:

> Please see enclosed, my response to Defendants' first and second set of interrogatories, request for admissions and request for discovery, for your review and filing.  Per my attached certificate, I have provided counsel their required copies of the aforementioned response.

Docket entry [59].  The same day the letter was filed, the Clerk returned the discovery responses to the Plaintiff, advising Plaintiff that actual discovery responses are not to be filed but simply served on the party who served them, and providing Plaintiff a blank "notice of service" form to be filed with the Clerk to document service of such responses.  [60]  Plaintiff filed [64] a notice of service of responses to Defendants requests for admissions on November 7, 2011.  Upon further review, the Court notes that the quoted language from the letter regarding responses to

---

³The Municipal Court Judgment regarding the ten offenses arising out of the April 29, 2009 incident is dated December 1, 2010.  [77-5] The Mississippi Department of Corrections website shows Wilson is serving three sentences on convictions out of Jackson County, MS.

discovery is ambiguous in that it refers to responses to "Defendants' first and second set of interrogatories" when the docket reflects Bromen and Stachura served only one set of interrogatories on Plaintiff.  Even more importantly, Wilson has presented no responses to Defendants' requests for admissions; he has never moved to withdraw deemed admissions; and he makes no mention whatsoever of the admissions in his response to Defendants' summary judgment motion.

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection ... signed by the party... " FED.R.CIV.P. 36(a)(3).  "A matter admitted under this Rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED.R.CIV.P. 36(b).  An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the court, nor can it be overcome on summary judgment by contradictory affidavit or other evidence in the summary judgment record.  *American Auto. Ass'n (Inc.) v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991); *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001).  "A party cannot attack issues of fact established in admissions by resisting a motion for summary judgment." *U.S. v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987).  As the Fifth Circuit stated in *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001), a judicial admission is a formal concession which "has the effect of withdrawing a fact from contention."  Id., 244 F.3d at 476. The Court must therefore accept as conclusively established with respect to the incident from which this lawsuit arises the following admissions by Wilson:

- Bromen and Stachura had probable cause to stop and arrest Wilson after he ran the red light at Magnolia Street and Cowan-Lorraine Road;

- neither Wilson nor his passenger owned the truck Wilson was driving;

• the driver's window of the truck was broken out, the ignition was popped out and the truck was being operated without a key;

•Wilson intentionally gave false information as to his identity;

•Wilson had no valid driver's license;

•Wilson fled from the officers, then turned on them and assaulted them, repeatedly striking Bromen and Stachura, resisting their efforts to subdue him, and attempting to gain possession of one of their guns;

•the officers repeatedly told Wilson to stop resisting, to stop fighting;

•Wilson was in possession of drug paraphernalia and unauthorized prescription medication at the time of the traffic stop; and

•Wilson was heavily intoxicated and under the influence of alcohol at the time of the incident.  [77-4]

## Summary Judgment Standard

Rule 56, FED.R.CIV.P., states that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A material fact is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) A genuine dispute about a material fact exists when the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. *Id.*  The Court must view the evidence and draw inferences most favorable to the non-moving party. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005); *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985).

The party who bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  One seeking

summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, and any affidavits, which he believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 325. If the movant fails to show the absence of a genuine issue concerning any material fact, summary judgment must be denied, even if the non-movant has not responded to the motion. *John v. State of Louisiana*, 757 F.2d at 708. If the movant carries his burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 324-325.

## Excessive Force

To state a claim under § 1983, Plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988)(citations omitted). For summary judgment purposes, all fact questions are viewed in the light most favorable to the nonmovant. *Aucoin v. Haney*, 306 F.3d 268, 271 (5th Cir. 2002).

The Fourth Amendment protects a free citizen, who is the subject of a seizure, from the use of excessive force in effecting an arrest, and such a claim is analyzed under a reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The constitutionally protected right is violated if there is (1) more than a *de minimus* injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force was objectively unreasonable. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998). To judge objective reasonableness under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

Wilson asserts Officers Stachura and Bromen used excessive force in arresting him. Excessive force claims "arising in the context of an arrest ... of a free citizen by a law enforcement officer should be analyzed under the Fourth Amendment and its 'reasonableness' standard.... The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*, 490 U.S. at 395-97. To state an excessive force claim, Wilson had the burden to show he suffered some injury, which resulted from force that was clearly excessive to the need for force, and that the excessive of the force used was objectively unreasonable. *Heitschmidt*, 161 F.3d at 839; *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989). While the Plaintiff need not establish a "significant injury," he must claim something more than a *de minimus* injury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999); *Hudson*, 503 U.S. at 10. To advance a claim for excessive force, the Plaintiff must have encountered more force than "the mere technical 'battery' that is inextricably a part of any arrest." *Nemeckay v. Rule*, 894 F.Supp. 310, 315 (E.D. Mich. 1995); see *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993).

The evidence before the Court shows Wilson was stopped for traffic violations and ultimately arrested and convicted of those crimes as well as drug offenses. It is undisputed that he fled from the officers and it is plain that force was required to effect his arrest. Despite the officers' repeatedly telling him to stop resisting and stop fighting, Wilson continued to strike Bromen and Stachura, resisted their efforts to subdue him, and even attempted to gain possession of one officer's gun. Upon the facts conclusively established in this case, the Court finds Wilson has failed to carry his burden to show the officers' use of force was excessive to the need or objectively unreasonable under the circumstances. It is therefore,

**ORDERED AND ADJUDGED** that for the reasons stated above, the motion for reconsideration is granted. It is further,

**ORDERED AND ADJUDGED** that Defendants' motion for summary judgment is granted and this case dismissed, with prejudice.

SO ORDERED AND ADJUDGED, this the 1st day of October, 2012.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE